## JOHNSON *vs.* OAKES.

Where a jury had been charged, and had retired at the dinner hour of the court, with instructions if they agreed on a verdict before the court met for its afternoon session to hand it to the clerk, and they did agree but their foreman took the verdict and put it in his pocket, and when the court met in the afternoon, the jury being in their box, the verdict was read and was a verdict for the defendant; and before the verdict was fully recorded, counsel for plaintiff suggested that there was a mistake and that the jury meant to find for the plaintiff, and upon inquiry being made of them, all with one exception answered that they had intended to find for plaintiff; it was not error to send the jury back to their room to agree upon a verdict, there being no suggestion that they had been tampered with and they not having been discharged from the consideration of the case, though it might have been better to declare a mistrial. (Rep.)

May 7, 1888.

Jury and jurors.   Verdict.   Mistake.   Practice in supe-rior court.   Before   Judge WELLBORN.   White superior court.   October term, 1887.

After argument of counsel in this case, the jury were charged and sent to their room to consider their verdict. The court announced that it was about to take a recess for dinner, and asked counsel what should be done with the verdict if the jury agreed before the recess was over; and it was agreed that they might hand their verdict to the clerk and disperse.   During the absence of the court and counsel, the jury agreed, the foreman put the verdict in his pocket, and they dispersed.   When the court convened after dinner, the jury being in their box, the judge inquired if the verdict had been received, whereupon the foreman pro-duced it and it was read, being as follows:

" We, the jury, find for the defendant.   E. C. HUNT, Foreman."

The court ordered it to be recorded.   After the clerk had recorded the words preceding the foreman's signature, counsel for the plaintiff suggested that the jury had made a mistake, as they had intended to find for the plaintiff.

The court then asked counsel for the defendant if they had any objection to inquiry being made of the jury as to what they intended to find. The counsel responded that they did object, for the ˙reason that the verdict was plain and unambiguous; and that the jury could not be heard to contradict their finding, ·especially after they had been dispersed over the court-ground and mixed with the people during the dinner hour. The objection was overruled, and the court inquired of the jury what they intended to find. With one exception, they all said they intended to find for the plaintiff. The court then asked defendant's counsel what should be done, and they replied that they would agree to a mistrial. Plaintiff's counsel refused to agree to this, but said the jury might be sent back to their room. Defendant's counsel objected to this, but the objection was overruled, and the jury were sent to their room with instructions to agree on a verdict; and when they came into court again, they rendered the following verdict:

"We, the jury, find for the plaintiff the premises in dispute, with costs of suit."

The defendant excepted to the action of the court. After the usual certificate to the bill of exceptions, the court adds the following note:

" While the clerk was engaged in entering the verdict, the statement was made that the jury had made a mistake as to who was plaintiff and who defendant; whereupon the court polled the jury, they being together in their box, as to whom they meant by the term defendant. Eleven answered that they understood Isaac Oakes to be defendant and intended to find for him; one answered that he understood Talitha Johnson to be defendant. The court explained which party was plaintiff and which defendant, and directed the jury to return and agree on a verdict, which they did, and returned a verdict for the plaintiff. This occurred after the jury had dispersed and reassembled, but they were together when the verdict was delivered by the foreman and when the attention of the court was called to the mistake."

A. F. Underwood and J. W. H. Underwood, by C. H. Sutton, for plaintiff in error.

J. J. Kimsey and W. K. Williams, *contra.*

BLECKLEY, Chief Justice.

The verdict as written out and returned, through a misconception of the meaning of the words " plaintiff" and " defendant," represented the intention of one juror, but misrepresented the intention of eleven of the jurors. The question was between a mistrial and sending the jury back to reconsider the verdict. Perhaps a mistrial would have been the better result. But the court, in the exercise of its discretion, preferred to remand the jury, and we cannot hold that this was an usurpation of power. There is no suggestion that the jury had been tampered with. The difference between finding for the plaintiff and for the defendant is certainly very broad, but if there was really a mistake, as there seems to have been, the court was right in allowing the verdict to be reconsidered, the jury not having been discharged from the consideration of the case. The verdict was still *in fieri*.

Judgment affirmed.