## 56396. BALLARD et al. v. TURNER.

Deen, Presiding Judge.

This is an action in four counts charging fraud, deceit, and malicious prosecution. From a verdict for the plaintiff Turner the defendants appeal. The evidence, construed in favor of the verdict, is briefly that Turner was in the business of selling cars and had previously sold automobiles to defendant Burnham; that Burnham traded for a 1974 Mark IV by returning a 1972 Mark IV he had previously purchased and agreeing to pay off the remaining loan on it and to borrow the balance cash from the bank after an initial $1,000 down payment. Turner was to hold the title certificate until paid in full. Burnham failed either to borrow the money, pay off the loan on the 1972 automobile, or pay the balance on the 1974 car. An $1,100 check was returned for insufficient funds. Turner remonstrated vigorously. Burnham finally told him that he could get a bank loan with co-defendant Ballard signing as guarantor, but that Ballard refused to do so until he showed him a title certificate. Turner, believing this ploy, eventually turned over the title certificate but took in exchange a power of attorney which he told Burnham he would use if necessary to add his security interest to the title certificate. Burnham assigned the title over to Ballard, who took possession of the vehicle and obtained a new title certificate in his own name. Turner, using the power of attorney, obtained a duplicate certificate in Burnham's name showing himself as owning the security interest, then had the vehicle brought in to his shop, whereupon both Burnham and Ballard swore out criminal warrants charging him with automobile theft. The grand jury returned a no bill to one indictment; the other was

*nolle prossed* and Turner brought this action for damages. *Held:*

1. Turner had the vehicle brought to him from the defendant's driveway by Lizzel Auto Recovery Bureau. A charge was later made that certain personal property was missing. The court correctly charged in this context that if the Bureau was an independent business not subject to the plaintiff's direction and control, a theft while in the Bureau's possession would not be chargeable to the plaintiff. The instruction was proper. Code § 105-501, *Azar v. GMAC,* 134 Ga. App. 176 (213 SE2d 500) (1975). While there are exceptions to the rule, as the *Azar* case demonstrates, such exceptions were not involved here.

2. The court charged that in considering fraud the jury may consider similar transactions in evidence to show fraudulent intent, if any, which was objected to on the grounds that it was an expression of opinion that fraud had been committed and that it was not adjusted to the evidence. It is adjusted to evidence of one of the plaintiff's witnesses that defendant Ballard once misrepresented to him, on a mobile home deal, the number of monthly payments owing, on the admission of which no enumeration of error is presented. Similar transactions are frequently admissible to show a fraudulent scheme. *Grainger v. Jackson,* 122 Ga. App. 123 (176 SE2d 279) (1970). There was no opinion expressed that fraud in fact existed.

3. The court charged Code § 105-2002 on aggravating circumstances and added that to authorize imposition of exemplary damages there must be evidence of fraud, etc. sufficient to raise a presumption of conscious indifference to consequences. He further submitted in writing alternate jury verdicts as to each count of the petition. On Count 3 there were blanks on one form for general damages, punitive damages and attorney fees. On that count the jury returned an amount for punitive damages only (Count 1 of the verdict, it should be noted, contained general but no punitive damages). The court on noticing this error (as to which no instruction had previously been given) asked each juror whether they understood that punitive damages could not stand without general damages, and whether it was his intent

that the plaintiff recover nothing on that count. Each juror replied in the negative. He then directed them to reconsider Count 3 only. He further charged that the matter was entirely open, and that they could find in favor of the defendant if they so desired. The verdict was then amended to add $500 as general damages on this count.

The court may not express approval or disapproval of the verdict. Code § 110-201. After the jury disperses, and the verdict has been received and recorded, it may not be amended in a matter of substance. Code § 110-111. This applies to a situation like that here, where the jury has found punitive but no general damages. *Parrish Bakeries v. Wiseman Baking Co.,* 104 Ga. App. 573 (122 SE2d 260) (1961). "If the judge was not satisfied that the verdict as returned was proper, before receiving the verdict he could have required the jury to return to the room and correct its verdict under proper instructions from the court (*Jordan v. Downs,* 118 Ga. 544, 45 SE 439); *Lowery v. Morton,* 200 Ga. 227, 229, 36 SE2d 661); or, after the verdict was received and recorded and the jury dispersed, he could have granted a new trial (*Smith v. Pilcher,* 130 Ga. 350, 355, 60 SE 1000); but he was without power by the decree thus to change and modify the verdict after it had been received and recorded, and the jury had dispersed." Id., p. 575. The judge may poll the jury in a proper case as to the intendment of its verdict. *McGahee v. Samuels,* 61 Ga. App. 773 (7 SE2d 611) (1940). And "where a jury makes a mistake in writing a verdict, and the verdict as returned into court does not express or contain the true finding of the jury, the jury before dispersing may change or modify its verdict in matter of substance so as to express the true intention and finding of the jury." *Monroe v. Alden,* 61 Ga. App. 829, 830 (7 SE2d 788) (1940). It was accordingly, where the verdict was erroneous on its face, not error to determine from the jury before its dispersal what its true intent had been, to give correct instructions on how the various verdicts might be framed under the evidence, and to return them to the jury room to correct the error.

4. In addition to the evidence set out above, it appears that Burnham and Ballard had engaged in other business deals together, that Ballard may have defrauded the seller in a prior mobile home transaction that

Burnham had obtained possession of the 1974 Mark IV by fraudulent misstatements and the passing of a bad check for $1,100; that he further fraudulently represented that if he were given the title certificate Ballard would be guarantor on a bank loan for the money to make the payment; that when the title certificate was handed to Burnham the latter gave it along with the vehicle to Ballard and Ballard then had the title put in his own name. As to the malicious prosecution count, the defendants acted in concert in taking out criminal warrants against the plaintiff, which were no-billed by the grand jury as to one and nolle-prossed as to the other, thus terminating the criminal actions in the plaintiff's favor. There is thus sufficient evidence of both fraud and conspiracy to leave the matter for jury determination. *Horton v. Johnson,* 192 Ga. 338, 346 (15 SE2d 605) (1941).

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED SEPTEMBER 12, 1978 — DECIDED OCTOBER 2, 1978 — REHEARING DENIED OCTOBER 18, 1978 —

*Watson, Brown, Foster & Murphy, John L. Watson, Jr.,* for appellants.

*Floyd, Stanford & Hardy, Max B. Hardy, Jr., A. J. Welch, Jr.,* for appellee.