## 47766. DAMPIER v. CITIZENS & SOUTHERN NATIONAL BANK.

CLARK, Judge. By reason of the Citizens & Southern National Bank proceeding in a single foreclosure under Code Ann. § 67-701 on two defaulted conditional sales contracts and stating the gross amount of the debts as a lump sum without segregation as to principal and interest owing separately on each document, this appeal presents two questions. The first is the legality of using a single foreclosure where multiple security instruments exist between the same parties. If ruled permissible, we must then decide if the foreclosure affidavit must specify what portion thereof is principal and what portion represents interest as to each contract.

1. We hold a single foreclosure proceeding under Code § 67-701 between the same creditor and the identical defaulting debtor on multiple security instruments is valid. This is true even though as here the conditional sale contracts involve different motor vehicles and were made on different dates. We do not agree with appellant's contention that such ruling "would defeat the basic fundamentals of fairness and justice." In fact we submit that the words of Chief Justice James Jackson in *Chamberlin & Co. v. Beck, Gregg & Co.,* 68 Ga. 346, 349, in upholding a single mortgage foreclosure where there was one mortgage on the same goods but two creditors with differing debts are appropriate: "It does not hurt defendants to make one foreclosure; it saves costs and helps them." If the debtor wishes to release one of the secured items from the proceeding he has the right to tender into court the amount owed on that particular contract as the instant appellant did in *Dampier v. Universal C. I. T. Credit Corp.,* 116 Ga. App. 303 (157 SE2d 159). As shown by the report in that case there was a single foreclosure of three conditional sales contracts which was upheld.

2. Appellant, debtor-defendant below, contends there is a fatal defect in the foreclosure by reason of the failure to plead separately the amount of principal and interest owing upon each of the contracts, citing *Harris v. Usry,* 77 Ga. 426, as supporting such assertion. This court has always honored the principle that the earliest full bench Supreme Court opinion constitutes a controlling precedent. *Haggard v. Shaw,* 100 Ga. App. 813 (112 SE2d 286); *State v. Jones,* 125 Ga. App. 361 (187 SE2d 902). That early case does not control here for a number of reasons which

we will list seriatim.

Firstly, there is a basic difference in the facts. This 1886 decision relied upon the wording of the execution which directed the levying officer to make the sum stated "and all accruing interest at the rate of ——%." Laconically, the court said its reason for requiring separation of interest and principal to be that "otherwise the judgment of foreclosure would draw interest on interest, and thus compound the interest." It cited Code § 3570 of our 1882 Code which is identical in language with § 110-304 of our present 1933 Code forbidding a judgment to carry interest upon interest. This *verboten* reads "but no part of such judgment shall bear interest except the principal which may be due on the original debt." In the case sub judice the affidavit recited there "is now outstanding and due the Citizens & Southern National Bank upon conditional sales contracts the sum of $3,606.37." The process directed the sheriff to "cause to be paid the sum of $3,606.37 and —— dollars for costs." Thus, it will be observed the instant case did not seek "accruing interest." That is to say, there is here no claim for interest on interest.

Secondly, plaintiff bank has by its conduct committed itself to a maximum recovery of the amount claimed and thereby cannot recover interest thereon. In a personalty foreclosure action defendant's counter-affidavit converts the proceeding to mesne process. *Hart v. Hatcher & Brannon,* 71 Ga. 717. With such conversion into a proceeding for trial plaintiff bank could have amended its claim at that point and segregated the amounts claimed as principal and as interest. Instead of doing so it elected to stand by the amount stated in its original affidavit and accompanying process and moved for dismissal of the counter-affidavit for failure to state any claim upon which relief could be granted. Thus, it elected to waive interest on its judgment.

Our view is buttressed by the limitation of liability of the forthcoming bond established by Code § 39-304 which provides the measure of damages on replevin bonds covering personalty. Although that section provides for recovery of "the value of the property at the time of its delivery under the bond, with interest thereon" the concluding sentence reads: "The amount of damages shall in no case exceed the amount due on the execution levied." See also *Hobbs v. Tindol,* 32 Ga. App. 609 (2) (124 SE 112).

Thirdly, the manner in which our Supreme Court treated *Harris v. Usry,* 77 Ga. 426, supra, in two subsequent unanimous

full-bench cases under the title of *Bank of Tupelo v. Collier* shows their interpretation of *Harris v. Usry* does not constitute an affirmance of the phrase "fatally defective" as used in the headnote of the 1886 decision. In the first of these two cases reported in 191 Ga. 852, 859 (14 SE2d 59) a judgment for the Bank of Tupelo was affirmed providing "the plaintiff in fi. fa. will make and file a renunciation of all interest on the judgment and have the execution amended accordingly." The second case is in 192 Ga. 409 (15 SE2d 499) where our Supreme Court ruled the inclusion of principal and interest in a gross amount which would have permitted interest to have been charged upon interest was "a mere irregularity" and therefore amendable even after the term of court had passed. See also *Bentley v. Phillips,* 171 Ga. 866 (5) (156 SE 898) where a verdict aggregating principal and interest followed by a judgment thereon was ruled defective but amendable and *Newby v. Maxwell,* 121 Ga. App. 18 (1) (172 SE2d 458) where our court held a judgment not to be invalid by reason of compounding interest in violation of Code § 110-304 because the trial judge amended the judgment to separate the principal and interest.

We also observe that in the second *Bank of Tupelo* case the Supreme Court expressly differentiated *Harris v. Usry,* saying, "In *Harris v. Usry,* 77 Ga. 426, where a judgment and fi. fa., allowing the recovery of interest on interest in a chattel-mortgage foreclosure were held illegal, there appears to have been no motion to amend either by making a proper segregation of principal and interest or *by eliminating the illegal future interest."* (Emphasis supplied.) *Bank of Tupelo v. Collier,* 192 Ga. 409, supra, p. 413.

As there is no claim to nor right of interest upon interest in the case at bar, the trial court's judgment is affirmed.

*Judgment affirmed. Bell, C. J., Hall, P. J., Pannell and Quillian, JJ., concur. Deen, Evans and Stolz, JJ., dissent. Eberhardt, P. J., disqualified.*

ARGUED JANUARY 5, 1973 — DECIDED MAY 11, 1973 — REHEARING DENIED JUNE 20, 1973 —

*Elsie H. Griner,* for appellant.

*Tillman, Brice, McTier & Coleman, George T. Talley,* for appellee.

EVANS, Judge, dissenting. This proceeding involves a foreclosure on personalty, in which both petition to foreclose and the execution fail to state the principal and interest separately. To the contrary,

it is all added together in one lump sum. In a full-bench decision by the Supreme Court of Georgia, in the case of *Harris v. Usry,* 77 Ga. 426, it is held: "Where, in the foreclosure of a mortgage on personalty, the principal and interest were not separated, the foreclosure was fatally defective and the fi. fa. was properly quashed on demurrer. To allow the principal and interest to be joined in one sum in the foreclosure would be to allow interest to be collected on interest." This is a plain, terse statement of the law. This full-bench decision has not been overruled. I believe we are bound by it. The majority opinion suggests its inapplicability in this language: "In the case sub judice there was no provision for any future interest." So far as we know, no future interest was provided for in the *Harris* case, supra, except the mandate of our law which makes all judgments and liquidated sums bear interest at the legal rate. This applies to the case sub judice. See Code §§ 57-108, 57-110. It is also suggested by the majority that in *Bank of Tupelo v. Collier,* 192 Ga. 409 (15 SE2d 499), it was held that a judgment providing for interest upon interest could be corrected after the term at which the judgment was obtained. But in the case we are concerned with there has been no attempt to amend, so far as the record discloses. Further, the language in the *Harris* case is that such foreclosure was "fatally defective." This means it was not subject to amendment.

Following the foregoing dissent, the majority has re-written its opinion and attempts to assert three reasons why the foreclosure in the case sub judice should be allowed to proceed.

First, it is stated that in the case of *Harris v. Usry,* 77 Ga. 426, supra, the execution directed the officer to make the sum stated, "and all accruing interest at the rate of ——%," whereas it is contended the affidavit in the case sub judice simply recites as due an outstanding lump sum of $3,606.37, and the process directed to the sheriff requires him "to cause to be paid the sum of $3,606.36, and —— dollars for costs." It is argued that in the latter case there is no claim for interest on interest. But this argument falls of its own weight.

Here there were two notes and conditional bills of sale foreclosed in one proceeding. The first note was for $2,138.40, with $207.45 "finance charge." The second note was for $3,924.30, with $290.35 "finance charge." Both notes were past due at time of foreclosure, on August 12, 1971. It is not shown how much was due on each note, but the total due on both is alleged to be $3,606.37. *Of course, a part of this sum was for interest.* Code § 57-110 provides that all

liquidated demands bear interest from the time the party shall become liable and bound to pay. The minimum legal rate of interest in Georgia at time of the foreclosure was 7%. See Code § 57-101. Thus, beyond question, a part of the amount set forth in the foreclosure was for interest. The majority opinion argues that the foreclosure execution did not specifically mention interest, and therefore, none was to be collected. This is a non sequitur. The law provides as to all judgments (and the foreclosure was a judgment) as follows: "All judgments in this state *shall* bear lawful interest upon the principal amount recovered." (Emphasis supplied.) Code § 57-108.

Also see *Guernsey v. Phinizy,* 113 Ga. 898 (2) (39 SE 402, 84 ASR 270). In the *Harris* case, supra, the execution did not specify any rate of interest; that was left blank. The officer, of course, was bound to collect the legal rate of interest.

Code § 57-108, which makes all judgments bear lawful interest on the principal amount recovered touches the very vitals of this case. How did the levying officer know how much of the $3,606.37 named in the foreclosure was principal and how much was interest? It was very important that he know because the law commanded him to collect 7% interest on the principal. But here principal and interest were lumped together and he had no alternative than to collect interest at 7% on the *entire amount* for which the foreclosure issued. This he was required to do by the mandate of the law. The defendant in this case, by affidavit of illegality, wishes it made known to him how much interest he is being charged, and the majority opinion says it will deny him the right to know.

Further, each of the notes in question contains this language, to wit: "Buyer promises to pay to the holder . . . in instalments as stated herein, together with a delinquency charge of 5% (not to exceed $5.00) on each instalment, not paid within ten days of its due date, . . ." It is most likely that this charge (which is nothing more or less than interest) was added into the total amount, in addition to the other charges of interest.

In *Buice v. McCrary,* 94 Ga. 418 (20 SE 632) the jury rendered a verdict for plaintiff for "forty-one dollars and four cents principal and interest" and it was held that "the verdict is ambiguous, inasmuch as it does not clearly disclose whether the interest referred to was interest to be computed on the amount specified, or was interest already computed and included in that amount. For this ambiguity the court was warranted in granting a new trial,

and judgment granting it is affirmed." This case is almost on all-fours with the case sub judice.

In *Bentley v. Phillips,* 171 Ga. 866, 877 (156 SE 898) it was held: "No part of a judgment shall bear interest except the principal which may be due on the original debt. Civil Code (1910), § 3432. In construing these sections this court held, in *Hubbard v. McRae,* 95 Ga. 705 (22 SE 714), that where a verdict in favor of a plaintiff manifestly includes both principal and interest, and does not specifically separate the amount of each, a new trial will be granted." Also see *Bishop v. Pendley Lumber Co.,* 141 Ga. 826 (82 SE 237), to the same effect.

In *Sewell v. Peoples Loan & Finance Co.,* 103 Ga. App. 155, 156 (118 SE2d 722) it is held: "The purpose of the rule requiring the separation of principal and interest is explained in *Harris v. Usry,* 77 Ga. 426, as follows: 'To allow the principal and interest to be joined in one sum in the foreclosure would be to allow interest to be collected on the interest.' "

In *McDonald v. GAC Finance Corp.,* 115 Ga. App. 361 (1) (154 SE2d 825), an affidavit of illegality was filed to a foreclosure because the principal and interest were not segregated, but there it was shown that: "Plaintiff's affidavit sets forth $548.58 principal, $199.18 interest to date of the affidavit . . . and future interest at the rate of 8% per annum." This is held to be sufficient.

Secondly, the majority opinion argues that the plaintiff bank has so committed itself that it cannot collect interest on interest. No argument worthy of comment is offered in support of this contention. The law directs the collection of interest on unliquidated claims and on judgments. The plaintiff bank has done nothing and said nothing to indicate that it wishes to enter a retraxit as to collection of interest. Nor can it do so unless this case is reversed. Even if it did, the defect would not be cured. The debtor wants to know how much principal and how much interest is represented by the claimed amount of $3,606.37 for which execution has issued. For aught that appears, these figures could have been pulled out of the air. No basis for this computation appears anywhere in the record.

Thirdly, the majority opinion argues that the Supreme Court of Georgia has in two cases ruled with respect to the case of *Harris v. Usry* in such fashion as to aid the position of plaintiff bank. Not so! The first case cited in *Bank of Tupelo v. Collier,* 191 Ga. 852, 858 (14 SE2d 59), holds that where the execution shows the exact amount of interest, to wit, $385.70, it was error to refuse to strike

this item because it represented interest on interest. *But in the case sub judice, absolutely nothing in the record shows (nor can it be computed) how much interest is included in the principal amount!* The second case involves the same parties, *Bank of Tupelo v. Collier,* 192 Ga. 409 (1), supra, holding that an irregular judgment which includes interest and principal in a gross amount may be amended and corrected, *provided by an inspection of the record, pleadings and verdict, and without extraneous proof, the respective amounts of principal and interest can be correctly segregated.* We repeat, there is no way that any calculation can be made in this case to show how much principal and how much interest are wrapped up in the total figure claimed, to wit, $3,606.37. These decisions are therefore not applicable and do not help the plaintiff bank. Furthermore, plaintiff bank has not offered to amend or correct—and cannot do so—unless and until this case is reversed and sent back to the lower court for that purpose. And, after all, that is exactly what the defendant is seeking; a return of the case, and a segregation of principal and interest!

I, therefore, dissent and vote to reverse the lower court.

I am authorized to state that Judges Deen and Stolz join in this dissent.